UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

RICHARD PANNELL,

       Plaintiff,

v.                                    Case No. 2:09-cv-00104

WEXFORD HEALTH SOURCES, INC.,
Pittsburgh, PA and Mt. Olive
Correctional Complex (MOCC),
JAMES C. BODDAY, President,
Wexford Health Sources, Inc.,
NAOMI ROBERTS, Health Services
Administrator, Wexford, MOCC,
DOCTOR SUBHASH GAJENDRAGADKAR[1], MOCC,
PHYSICIANS ASSISTANT PAMELA RAMSEY, MOCC,
DOCTOR KIM LAUDER, Regional Medical Director,
Wexford, JAMES RUBENSTEIN, Commissioner,
West Virginia Division of Corrections,
DAVID BALLARD, Warden, MOCC,
MS. KATHY DILLON, MOCC, and
MS. CHARLENE SOTAK, Grievance Coordinator, DOC,

       Defendants.

PROPOSED FINDINGS AND RECOMMENDATION

On February 6, 2009, Plaintiff filed a Complaint under 42
U.S.C. § 1983 concerning his medical treatment at the Mount Olive
Correctional Complex ("MOCC") where he was then incarcerated.  This
matter is assigned to the Honorable Joseph R. Goodwin, Chief United

---

[1]  The correct spelling of this defendant's name appears to
be Dr. Subhash Gajendragadkar.  Mis-spellings in the parties
pleadings and briefs will be corrected where appropriate herein,
and the Clerk is directed to correct the mis-spelling on the
docket sheet.  The same should be done for Dr. Kim Lauder.

States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

**FACTUAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS**

According to the Complaint, Plaintiff suffered a heart attack in May of 2007, while incarcerated at MOCC.  Plaintiff states that he had previously complained of chest pains to the medical staff at MOCC, and was told it was gas pains.  The Complaint further states:

> The medical department and my unit manager each have a copy of a letter from Stephen A Lewis, M.D., F.A.C.C., he is my cardiologist from the Associated Cardiology of Charleston, in Charleston, West Virginia.  Dr. Lewis stated that the artery that caused the first heart attack is acting up and is probably blocked again.  In the same letter the doctor recommended that I should have another cath placed if I have any chest pains, with an emphasis on ANY.  The stress test was done on October 4, 2007.  I have complained of chest pains several times since the cath was placed in May of 2007, and thus I was sent for the stress test in October of 2007 (approximately 15 months now).  I have complained of more chest pains and usually I am told to put in a sick call slip, and on the occasions that I am seen either by sick call or when I am sent directly to medical when I complain of these chest pains, I am told that it is gas build up.  This sounds like the incompetent medical treatment that I received before the first heart attack.  I believe that Wexford Health Sources and its employees along with the administrative staff members herein are waiting until I have another heart attack before I am treated for these chest pains.  I have waited over 15 months now since my cardiologist, Dr. Lewis, recommended that I consider having another cath put in because of the artery that caused the first heart attack is probably blocked again.  This is more than long enough for me to wait to be treated for the continued chest pain I am having.  The last time I had these severe chest pains was in December of 2008, I was transported from my job in the industries

building because of these chest pains and was sent to the
infirmary here at Mt. Olive.  The staff did two EKG's,
the first one came up abnormal and the second one came up
normal.  No reasons were given to me for the abnormal one
and I was given a pain pill every night and my vitals
were taken once a day for 5 days and then I was sent back
to the yard.  I was not taken to the outside
Cardiologist, Dr. Lewis.  I was told that medical was
going to make arrangements for me to go out and see the
doctor but I have not been sent as of the date of this
filing.  The medical and administrative staff here at Mt.
Olive is fully aware of my serious medical need and
chooses to do nothing for me.  These chest pains may well
lead to another heart attack and no one here wants to
send me back to my cardiologist as the cardiologist has
recommended.  The Cardiologist, Dr. Lewis recommends that
if I have **_any_** chest pains, I have another stent placed if
the artery is blocked.  I have on several occasions
complained to the medical staff and I have fully and
completely informed the administrative staff of Mt. Olive
and the Division of Corrections and they all choose to do
nothing.  This is **_Deliberate Medical Indifference to a
Serious Medical Need_** and is a violation of my U.S.
Constitutional Eight[h] Amendments Right to be free of
cruel and unusual punishment.

(# 1 at 4-6).  Plaintiff seeks injunctive relief in the form of
being taken to see his cardiologist as soon as possible and as
often as the cardiologist deems necessary, as well as compensatory
and punitive damages.  (Id. at 6).

### DEFENDANTS' MOTIONS

On March 5, 2009, defendants Mount Olive Correctional Complex,
Commissioner James Rubenstein, Warden David Ballard, Kathy Dillon
and Charlene Sotak filed a Waiver of Reply and Alternative Motion
to Dismiss (# 17) and a Memorandum of Law in support thereof (#
18).  On March 5, 2009, defendants Wexford Health Sources, Inc.,
James C. Bodday, Naomi Roberts, Dr. Subhash Gajendragadkar,

Physicians Assistant Pamela Ramsey, and Dr. Kim Lauder filed a Motion to Dismiss (# 19) and a Memorandum of Law in support thereof (# 20).

On March 27, 2009, a Motion to Dismiss (# 27) and a Memorandum of Law in support thereof (# 28) were filed on behalf of Naomi Roberts addressing Plaintiff's allegations covering the time period before May 1, 2008, when she was employed by Correctional Medical Services, Inc.

On March 27, 2009, a Motion to Dismiss (# 29) and a Memorandum of Law (# 30) were filed on behalf of Dr. Subhash Gajendragadkar addressing Plaintiff's allegations covering the time period before May 1, 2008, when he was employed by Correctional Medical Services, Inc.

On March 6, 2009, the undersigned entered an Order directing Plaintiff to file a response to the motions that had been filed on March 5, 2009 by March 27, 2009, with replies to be filed by April 10, 2009. (# 22). Plaintiff thereafter moved for two extensions of time to file responses to all of the motions to dismiss, including those that had been filed on March 27, 2009. By Order entered on June 22, 2009, Plaintiff was directed to file a response or responses to all of the pending motions to dismiss by July 10, 2009, with replies due by July 24, 2009. (# 34). Plaintiff never

4

filed any responses to the motions to dismiss.[2]

On June 25, 2009, Plaintiff filed a Motion for Production of Documents requesting reproduction of all of his medical records. (# 35). That motion has been addressed in a separate Order and is unnecessary to the resolution of the pending motions to dismiss.

**STANDARD OF REVIEW**

In <u>Bell Atlantic Corp v. Twombly</u>, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." <u>Id.</u> at 555.

The Supreme Court elaborated on its holding in <u>Twombly</u> in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

---

[2] According to Plaintiff's second motion for extension of time, he was transferred to the Huttonsville Correctional Center on or about April 31, 2009. Plaintiff's mailing address was not modified on the docket sheet, so it appears that the Order granting the second extension of time was mailed to him at MOCC. However, the mailed Order was not returned to the Clerk's Office as undelivered, and there is no indication that Plaintiff did not receive the court's Order.

Two working principles underlie our decision in <u>Twombly</u>.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [<u>Twombly</u>, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556. * * *

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

## **<u>ANALYSIS</u>**

**A.   Deliberate indifference standard.**

Federal courts are discouraged from interfering with the daily operations and administration of state correctional facilities. <u>See</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 562 (1979) (warning courts against becoming "enmeshed in the minutiae of prison operations"). Inquiry of federal courts into prison management must be limited to the issue of whether a particular administrative action violates the federal Constitution. <u>Id.</u> Plaintiff has alleged that each of the defendants has violated his Eighth Amendment right to be free

from cruel and unusual punishment.

In 1976, the Supreme Court set the standard for evaluating whether a prisoner's Eighth Amendment right to be free from cruel and unusual punishment was violated based upon a prison healthcare provider's deliberate indifference (subjective component) to the prisoner's serious medical needs (objective component). <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976). The Court found that deliberate indifference can be demonstrated in at least three different ways: "by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." 429 U.S. at 104-05 (citations omitted).

Addressing the objective component first, "serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. <u>Gaudreault v. Munic. of Salem, Mass.</u>, 923 F.2d 203, 208 (1st Cir. 1990); <u>Iko v. Shreve</u>, 535 F.3d 225, 241 (4th Cir. 2008) (quoting <u>Henderson v. Sheahan</u>, 196 F.3d 839, 846 (7th Cir. 1976)). The subjective component of "deliberate indifference" sets a high bar to recovery. In <u>Iko</u>, a case involving excessive use of pepper spray by correctional officers, the Fourth Circuit wrote:

> An officer is deliberately indifferent only when he "knows of and disregards" the risk posed by the serious medical needs of the inmate. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994). ***

This court has identified two slightly different aspects of an official's state of mind that must be shown in order to satisfy the subjective component in this context. First, *actual knowledge of the risk of harm* to the inmate is required. <u>Young v. City of Mt. Ranier</u>, 238 F.3d 567, 575-76 (4th Cir. 2001); *see also* <u>Parrish ex rel. Lee v. Cleveland</u>, 372 F.3d 294, 303 (4th Cir. 2004) ("It is not enough that the officer [] *should* have recognized it."). Beyond such knowledge, however, the officer must *also* have "recognized that *his actions were insufficient*" to mitigate the risk of harm to the inmate arising from his medical needs. <u>Parrish</u>, 372 F.3d at 303 (emphasis added).

In <u>Smith v. Smith</u>, ___ F.3d ___, No. 08-7139, 2009 WL 5066663 (4th Cir. Dec. 28, 2009), the Fourth Circuit ruled that an inmate stated a claim against a prison nurse for her alleged deliberate indifference to the plaintiff's serious medical need when she tore up the paperwork needed for him to receive treatment. Her actions delayed his treatment from May 20 to June 6. Delayed medical treatment can constitute a manifestation of deliberate indifference. <u>Estelle</u>, 429 U.S. at 104-05 n.11 (citing <u>Westlake v. Lucas</u>, 537 F.2d 857, 859 (6th Cir. 1976)).

None of the defendants has disputed that Plaintiff's heart attack and related blockage and complaints of chest pains are a serious medical need. Accordingly, the question for this court to resolve is whether Plaintiff has sufficiently alleged that each of the defendants was deliberately indifferent to his serious medical need.

**B.   Motion to Dismiss filed by the DOC Defendants.**

The undersigned will first address the motion filed by the Mount Olive Correctional Complex, Commissioner Rubenstein, Warden Ballard, Kathy Dillon and Charlene Sotak (# 17).

<u>Mount Olive Correctional Complex</u>

The Mount Olive Correctional Complex ("MOCC") is a facility run by the West Virginia Division of Corrections, which is a state agency.   The DOC Defendants have argued that this court lacks jurisdiction over the MOCC under the Eleventh Amendment to the United States Constitution.   (# 18 at 3).

The undersigned does not read Plaintiff's Complaint to name MOCC as a separate defendant in this action.   Rather, the Complaint lists Wexford Health Sources, Inc., both in Pittsburgh, PA (its corporate headquarters) and at MOCC, as a defendant, and then lists MOCC as the place of employment for each of the individual defendants who are or were employed there.

Nevertheless, the DOC Defendants correctly assert that a suit against a state or a state agency for money damages is barred by the Eleventh Amendment.   A state agency is not a "person" within the meaning of 42 U.S.C. § 1983, and can only be sued for injunctive relief.   <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58 (1989).   The undersigned proposes that the presiding District Judge **FIND** that, to the extent that Plaintiff intended to raise a claim for damages against the Mount Olive Correctional

9

Complex, such a claim is barred by the Eleventh Amendment.

<u>The DOC defendants</u>

Defendants Rubenstein, Ballard, Dillon and Sotak (hereinafter "the DOC Defendants") are supervisory and administrative employees of the West Virginia Division of Corrections, who have had no direct involvement in Plaintiff's medical treatment.  Prior to the Supreme Court's ruling in <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994), the Fourth Circuit established "the principle that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." <u>Slakan v. Porter</u>, 737 F.2d 368, 372 (4th Cir. 1984).  A named supervisor may be liable for acts of subordinates if the official was aware of a pervasive, unreasonable risk of harm from a specified source and failed to take corrective action as a result of his deliberate indifference or tacit authorization of the offensive practice.  <u>Id.</u> at 373.

Liability may attach where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." <u>Id.</u> at 372.  The relevant inquiry is whether the defendants acted "wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." <u>Moore v. Winebrenner</u>, 927 F.2d 1312, 1315 (4th Cir. 1991).  However, the Fourth Circuit has held that supervisory prison officials are entitled to rely on

the professional judgment of trained medical personnel.  <u>See</u>
<u>Miltier</u>, 896 F.2d at 854.  Thus, prison officials fulfill their
duty simply by taking reasonable measures to ensure that an inmate
receives health care.  Even if the health care provider acts
negligently, there is no violation of the Eighth Amendment.

The DOC Defendants' Memorandum of Law addresses Plaintiff's
Eighth Amendment claims as follows:

> In the present case, the Plaintiff's allegations do
> not rise to the level necessary to advance a claim
> against Defendants [MOCC], Commissioner Rubenstein,
> Warden Ballard, Kathy Dillon, and Charlene Sotak.  It is
> clear, from his own statement of the case, that he is
> being provided access to health care providers.  <u>See</u>
> <i>Document 1 at Section IV.</i>  These Defendants cannot be
> charged with second guessing the clinical decisions of
> the treatment providers.  As the United States Court of
> Appeals for the Fourth Circuit has held:
>
>> Even assuming that the physicians' failure to
>> provide a cardiac exam was a pervasive and
>> unreasonable risk of harm from some specific
>> source," <u>see</u> <u>Slakan</u>, 737 F.2d at 372, it would
>> be an unprecedented extension of the theory of
>> supervisory liability to charge these wardens,
>> not only with ensuring that [the inmate]
>> received prompt and unfettered medical care,
>> but also with ensuring that their subordinates
>> employed proper medical procedures-procedures
>> learned during several years of medical
>> school, internships, and residencies.
>> <u>Miltier</u>, 896 F.2d at 856.

(# 18 at 5).

The undersigned proposes that the presiding District Judge
**FIND** that Plaintiff's Complaint does not allege any conduct by the
DOC Defendants sufficient to give rise to a violation of
Plaintiff's constitutional rights.  These defendants were entitled

to rely upon the judgments of the medical defendants concerning Plaintiff's medical treatment, and Plaintiff's arguments that these defendants were deliberately indifferent to Plaintiff's condition are unavailing.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Plaintiff's Complaint fails to state a claim against defendants Rubenstein, Ballard, Dillon and Sotak.

It is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Motion to Dismiss filed on behalf of the DOC Defendants (# 17).

### C. Motion to Dismiss on behalf of defendants Roberts and Gajendragadkar, as former employees of Correctional Medical Services, Inc.

On March 27, 2009, attorney Joseph M. Farell, Jr. filed two Motions to Dismiss on behalf of Naomi Roberts (# 27) and Dr. Subhash Gajendragadkar (# 29), addressing the allegations in Plaintiff's Complaint that arose prior to May 1, 2008, while Correctional Medical Services, Inc. ("CMS") was the medical provider at MOCC, and while Roberts and Gajendragadkar were employed by CMS.

The Motions to Dismiss assert that Plaintiff's Complaint makes no specific allegations against either of these defendants, and fails to specifically attribute any allegedly unconstitutional conduct to either of these defendants.  The Memoranda of Law filed on behalf of these defendants contend that the Complaint fails to

12

provide a "short and plain statement of the claim showing that the pleader is entitled to relief," as required by Rule 8 of the Federal Rules of Civil Procedure, and that these defendants have not been provided with fair notice of what claims are made against them, and that the allegations, as plead, do not rise above the "speculative level," as required in <u>Twombly</u>.  (## 28 and 30).

Other than listing them in the style of the case, and in the list of defendants, Plaintiff's Complaint does not specifically mention Roberts or Gajendragadkar.   Concerning Plaintiff's treatment prior to May 1, 2008, the Complaint alleges that Plaintiff suffered a heart attack in May 2007, and that "medical staff" improperly determined that the chest pains he had suffered prior thereto were gas pains.  The Complaint further acknowledges that, following the heart attack, Plaintiff was treated by an off-site cardiologist and that, in October 2007, he was given a stress test.  The Complaint further states that Plaintiff has been seen in "sick call" or by "medical" when he complains of chest pain. Plaintiff's allegations concerning his treatment prior to May 1, 2008 amount to no more than a potential mis-diagnosis of his chest pains prior to the heart attack in May 2007, and a disagreement with the course of treatment he received thereafter.

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaint fails to state a claim against defendants Naomi Roberts and Dr. Subhash Gajendragadkar for the time period

prior to May 1, 2008.   Therefore, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Motions to Dismiss (## 27 and 29) filed on behalf of these defendants concerning the allegations for the time period prior to May 1, 2008.

    D.    **Motion to Dismiss filed on behalf of defendants Wexford Health Sources, Inc., James C. Bodday, Naomi Roberts, Dr. Subhash Gajendragadkar, Physicians Assistant Pamela Ramsey and Dr. Kim Lauder (hereinafter collectively referred to as "the Wexford Defendants").**

<u>James Bodday</u>

Plaintiff's Complaint lists James C. Bodday as a defendant and describes him as the President of Wexford Health Sources, Inc.   The Memorandum of Law filed with the Motion to Dismiss on behalf of the Wexford Defendants states:

> The defendant James C. "Bodday" has also not been served for the reason that there is no James C. "Bodday" who has been or is now employed by Wexford Health Sources, Inc.   We will advise the Court that an individual by the name of James Roddey was the President of Wexford Health Sources, Inc. from 1996 to November 1999, when he was elected as Allegheny County's First Executive.   Since Mr. Roddey has not been president for ten (10) years, defendant Wexford Health Sources, Inc. could not assume that the plaintiff was attempting a claim against Mr. Roddey.

(# 19 at 2).   As noted previously herein, Wexford Health Sources, Inc. has been the medical provider at MOCC since May 1, 2008.

Plaintiff's Complaint does not contain any specific allegations concerning the conduct of a James Bodday or a James Roddey, who clearly was not the President of Wexford Health Sources, Inc. during the time period in question.   In fact, there are no allegations

14

tying any President of Wexford Health Sources, Inc. to any of the conduct complained of in the Complaint.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaint fails to state a claim against the defendant named as James C. Bodday, President, Wexford Health Sources, Inc.

<u>Roberts, Gajendragadkar, Ramsey and Lauder</u>

The other individual defendants named in Plaintiff's Complaint who are or were employed by Wexford Health Sources, Inc. are Naomi Roberts, Dr. Subhash Gajendragadkar, Physicians Assistant Pamela Ramsey (who is no longer employed by Wexford and has not been served with process) and Dr. Kim Lauder.  The Motion to Dismiss (# 19) and Memorandum of Law (# 21) filed on behalf of these defendants asserts that the Complaint contains no specific allegations against any of these individuals.  The Memorandum further states:

> The only references to individuals other than Wexford Health Sources, Inc. are vague references to "employee" and "staff."  Obviously, the plaintiff knows the names of the individuals he included in the style of the civil action.  If any of these individual defendants were involved in his care or alleged lack of care, the plaintiff would have named them and the actions or inactions they took. As the Complaint is drafted, there is nothing for the individual defendants to admit or deny.  The Complaint fails to advise them of what, if any, claims are made against them.

(# 21 at 2-3).

The Memorandum of Law filed by the Wexford Defendants further asserts that the Complaint fails to state a proper Eighth Amendment

15

claim of deliberate indifference.  Addressing Plaintiff's treatment after May 1, 2008, which was the date that Wexford assumed responsibility for inmate medical treatment at MOCC, the Memorandum of Law states:

> The Complaint further states that [Mr. Pannell] still complains of chest pains.  However, the Complaint also states that he has been seen by "sick call" or "medical" when he complains of chest pains.  While Mr. Pannell may disagree with the course of treatment by the medical staff, his disagreement over the care does not constitute deliberate indifference.
>
> Rather than support a claim for deliberate indifference, the remainder of the Complaint again shows that the medical staff provides care and treatment when the symptoms of Mr. Pannell become[] serious enough to warrant said treatment, in the opinion of the medical staff.  In December of 2008, Mr. Pannell alleges that he suffered severe chest pains.  Again, these chest pains were not ignored.  He was transported from his job in the Industries Building and sent to the infirmary at Mt. Olive.  The infirmary staff did not ignore his complaints or treat him with deliberate indifference.  According to the Complaint, the staff performed two (2) EKG's.  In addition to the medical testing, Mr. Pannell was prescribed medication.  According to the Complaint, Mr. Pannell's "vitals" were taken once a day for five (5) days.
>
> Mr. Pannell's conclusory allegation that the medical staff is ignoring his symptoms simply is not supported by the allegations of the Complaint.  In addition, it is clear that Mr. Pannell disagrees with the course of treatment selected by the medical staff.  However, this disagreement does not constitute deliberate indifference. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).
>
> An analysis of the Complaint leads to the conclusion that the Complaint falls far short of the allegations necessary to state a claim under the Eighth Amendment for ineffective medical assistance.  Accordingly, the Wexford defendants ask the Court to dismiss the plaintiff's claims against said defendants [footnote omitted].

(# 21 at 5-6).

The allegations in Plaintiff's Complaint concerning his treatment after May 1, 2008 establish that, prior to the filing of the Complaint in February of 2009, the last time Plaintiff had suffered "severe chest pains" was in December of 2008. Plaintiff underwent two EKGs at that time, and Plaintiff's vital signs were monitored for five days thereafter, and some pain medication was administered to Plaintiff. Plaintiff's Complaint chiefly seems to challenge the failure of the medical staff at MOCC to send him back to see his outside cardiologist. Plaintiff's Complaint does nothing more than disagree with the medical staff's decision that a return visit to the cardiologist was not necessary at that time, and Plaintiff's Complaint makes no further allegations against the individual Wexford Defendants which would support a finding of a violation of Plaintiff's Eighth Amendment rights.

### Wexford Health Sources, Inc.

Although not specifically addressed by the Wexford Defendants in their Motion and Memorandum of Law, Plaintiff's Complaint does not allege that the failure to send him back to see his cardiologist, or any of the other conduct alleged in the Complaint resulted from an official policy or custom of Wexford Health Sources, Inc., which was a "moving force" or a direct causal link in Plaintiff's alleged constitutional deprivation. Accordingly, Plaintiff has not properly alleged a claim against Wexford Health

17

Sources, Inc. that is cognizable in a section 1983 action.  <u>See</u>
<u>Monell v. Dept. of Social Services</u>, 436 U.S. 658 (1978); <u>City of</u>
<u>Oklahoma City v. Tuttle</u>, 471 U.S. 808 (1985).

The undersigned proposes that the presiding District Judge **FIND**
that Plaintiff's Complaint fails to state a claim against defendants
Wexford Health Sources, Inc., Naomi Roberts, Dr. Subhash
Gajendragadkar, Physicians Assistant Pamela Ramsey, and Dr. Kim
Lauder.

For the reasons stated herein, it is respectfully **RECOMMENDED**
that the presiding District Judge **GRANT** the Motion to Dismiss filed
on behalf of all of the Wexford Defendants (# 19).

**E.   Plaintiff's request for injunctive relief is moot.**

To the extent that Plaintiff is seeking injunctive relief from
the defendants named herein, in the form of being sent to see his
cardiologist, that request is now moot, in light of the fact that
Plaintiff is presently incarcerated at the Huttonsville Correctional
Center ("HCC").  Even if Plaintiff could successfully state a claim
for injunctive relief, the MOCC defendants cannot provide that
relief.  Furthermore, HCC is located within the jurisdiction of the
United States District Court for the Northern District of West
Virginia.  Thus, should Plaintiff still be seeking such injunctive
relief, the United States District Court for the Northern District
of West Virginia would be the appropriate court in which to address
that issue.  Accordingly, the undersigned proposes that the

18

presiding District Judge **FIND** that Plaintiff's request for injunctive relief in this court is now moot.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections), and then three days (mailing), from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties and Chief Judge Goodwin.

19

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff and counsel of record.

February 23, 2010
                    Date

*Mary E. Stanley*

Mary E. Stanley
United States Magistrate Judge